**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT JOHNSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CHEVRON CORPORATION, KINDER MORGAN, ENERGY TRANSFER PARTNERS, TEXACO INC., SUNOCO INC., and COASTAL CORPORATION,<br><br>　　　　　Defendants. | Civil Action<br>No. 1:21-CV-20548-KMW-SAK<br><br>**MEMORANDUM OPINION** |

**I.　　INTRODUCTION**

This memorandum opinion addresses the five motions pending before the Court in this matter, specifically (1) Kinder Morgan's ("KM") Motion to Dismiss the Complaint of Plaintiff Robert Johnson ("Plaintiff") (ECF No. 6); (2) Chevron Corporation's ("Chevron") Motion to Dismiss Plaintiff's Complaint (ECF No. 17); (3) KM's Motion to Strike or Dismiss Plaintiff's Amended Complaint (ECF No. 22); (4) the Joint Motion of Chevron and Texaco Inc. ("Texaco") to Dismiss Plaintiff's Amended Complaint (ECF No. 30); and (5) Plaintiff's Motion for Leave to Submit a Second Amended Complaint (ECF No. 29). As is set forth fully below, Plaintiff's Amended Complaint is dismissed in its entirety with prejudice.

**II.　　BACKGROUND**

　　**A.  Procedural History**

Plaintiff Robert Johnson ("Plaintiff"), proceeding *pro se*, filed his initial Complaint on December 16, 2022, in which he named as defendants KM, Chevron, and Energy Transfer Partners

(ECF No. 1). Thereafter, on January 19, 2022, KM filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim ("KM's First Motion to Dismiss") (ECF No. 6). Chevron separately filed its own Motion to Dismiss for failure to state a claim on March 28, 2022 ("Chevron's First Motion to Dismiss") (ECF No. 17).[1]

On April 14, 2022, Plaintiff filed an Amended Complaint, adding three additional defendants—Texaco Inc. ("Texaco"), Sunoco Inc., and Coastal Corporation (ECF No. 19). Though Plaintiff purported to submit his Amended Complaint as of right pursuant to Fed. R. Civ. P. 15(a)(1)(B), more than 21 days had elapsed since the filing of KM's First Motion to Dismiss the initial Complaint. It appears that Plaintiff had neither received consent from KM or Chevron to submit an Amended Complaint, nor had he sought leave to amend from the Court.

On April 26, 2022, KM filed a second Motion seeking to strike Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 15 as being untimely and/or improperly filed ("KM's Motion to Strike") (ECF No. 22). In the alternative, KM's Motion seeks dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim ("KM's Second Motion to Dismiss") (*Id.*). On May 26, 2022, Chevron and Texaco jointly filed a Motion to Dismiss Plaintiff's Amended Complaint for failure to state a claim (the "Joint Motion to Dismiss") (ECF No. 19).

---

[1] Chevron's First Motion initially sought dismissal of Plaintiff's Complaint for lack of personal jurisdiction and for failure to state a claim (ECF No. 17); KM's First Motion only sought dismissal for failure to state a claim (ECF No. 6). Thereafter, on April 28, 2022, Chevron submitted a Notice advising the Court that it was voluntarily withdrawing its First Motion insofar as it sought dismissal for lack of personal jurisdiction; Chevron clarified that it was not withdrawing its First Motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 23). Chevron also submitted a separate Notice (ECF No. 18) advising the Court that it was joining in KM's First Motion to Dismiss (ECF No. 6), which incorporated by reference Chevron's First Motion. Consistent with these Notices, the Court only considers Chevron's moving papers insofar as they seek dismissal of Plaintiff's initial Complaint under Fed. R. Civ. P. 12(b)(6).

On May 17, 2022, Plaintiff filed a Motion for Leave to File a Second Amended Complaint ("SAC"), seeking only to correct the names of the Defendants listed in his Amended Complaint (ECF No. 29). Specifically, Plaintiff seeks to change the names of "Kinder Morgan" to "Kinder Morgan Inc."; "Energy Transfer Partners" to "Energy Transfer Partners, GP, L.P."; and to completely remove Coastal Corporation from his lawsuit (*Id.*). KM opposes Plaintiff's Motion for Leave to file a SAC (ECF No. 31).

### B. Factual Background

The facts of the underlying lawsuit center around the death of Plaintiff's brother, Braden Johnson ("Decedent"). It is alleged that Decedent fell ill and ultimately died in April 2021, from certain asbestosis-related conditions, which Plaintiff charges Decedent suffered as a result of his forty-year career working at the Eagle Point Refinery (the "Refinery") in Westville, New Jersey (ECF No. 19 at 6).[2] Plaintiff primarily seeks monetary damages against the Defendants for certain emotional and financial damages he alleges he personally suffered as a result of needing to serve as a thirty-day caregiver to the Decedent (*Id.*). Specifically, Plaintiff demands $60 million in damages, as well as an order that "a medical facility [be] constructed by the defendants to aid, treat and comfort patients who have been infected with asbestosis and/or asbestosis-related conditions [and that] [t]he medical facility be named in honor of Braden Johnson my brother." (*Id.* at 8).

According to the Amended Complaint, Decedent began working at the Refinery in the 1960s and continued to work there for forty years (*Id.* at 6). Plaintiff alleges that the Refinery, which Texaco built in 1949, had been constructed using asbestos-based products (*Id.* at 10). In the years following the Refinery's construction, Plaintiff claims that the named Defendants traded

---

[2] As discussed in Part II *infra*, the Court denies KM's Motion to Strike and finds that the Amended Complaint is the operative pleading. Therefore, the Court cites to Plaintiff's Amended Complaint for purposes of reciting the relevant allegations.

3

ownership of the Refinery among themselves to "multiply [their] wealth" and to avoid the "wrongdoing and negligence regarding [the Refinery's]" hazardous working conditions (*Id.* at 13). Plaintiff alleges that each Defendant is liable to him because none of them had ever "informed [his] brother or any of their workers . . . of the dangerous working conditions" during their respective periods of alleged Refinery ownership (*Id.* at 12). Plaintiff alleges that the Decedent developed asbestosis because the Defendants never informed him of the presence of asbestos or provided him with protective gear (*e.g.*, masks, hazmat suits) (*Id.* at 6).

Once the Decedent's condition had become terminal, Plaintiff alleges that he left his job in the entertainment industry in order to serve as a thirty-day caregiver to the Decedent during his final days (*Id.*). As a result of his brother's illness and, by extension, the Defendants' alleged wrongdoings, Plaintiff asserts that he was forced to cancel several "lucrative projects," including the "Black Caesar Movie," for which Plaintiff alleges to have previously been the executive producer, music director, and starring character (*Id.*). Plaintiff asserts that this film would have received a gross revenue of $300 million (*Id.* at 7, 12). Plaintiff further claims that he was also required to cancel his role as "Bumpy Johnson" in a major mob film (*Id.* at 6). In addition to these alleged financial harms, Plaintiff also seeks compensation for emotional distress he suffers from having witnessed the Decedent's illness and death (*Id.* at 6, 11). Plaintiff claims he is entitled to this relief because the Defendants "are not human" and "are guilty of gross negligence knowing that asbestos contaminated working conditions that [his] brother and other employees worked under was dangerous enough conditions for their life expectancy to be limited." (*Id.* at 8).

### III.   DISCUSSION

The Court must first discern which of Plaintiff's pleadings is the operative pleading to determine the order and manner of disposition of the five pending motions. Therefore, the Court

first considers Plaintiff's purported Amended Complaint (ECF No. 19) and KM's Motion to Strike the same (ECF No. 22).

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, plaintiffs are permitted to amend their complaints once as a matter of course either (1) within 21 days after serving the initial complaint, or (2) within 21 days following the service of an opposing party's motion brought under Rule 12(b). *See* Fed. R. Civ. P. 15(a)(1)(B). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). As to the latter method, Rule 15 encourages courts to "freely give leave when justice so requires." *Id.*

In its Second Motion, KM asks this Court to strike Plaintiff's Amended Complaint as untimely pursuant to Rule 15(a)(1)(B). KM points out that Plaintiff submitted this filing 85 days after KM submitted its First Motion to Dismiss Plaintiff's initial Complaint, which certainly exceeded the 21 days permitted by Rule 15 for amendments as a matter of course. *See* Fed. R. Civ. P. 15(a)(1)(B). Though Plaintiff purported to submit his Amended Complaint pursuant to Rule 15(a)(1)(B) (ECF No. 19 at 1), he apparently concedes that he neither received the written consent from the opposing parties nor sought leave from the Court to file an Amended Complaint, as required by Rule 15(a)(2) (ECF Nos. 32, 36). However, the decision to permit amendment of a pleading rests within the sound discretion of the district court. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 276 (3d Cir. 2001). Generally speaking, plaintiffs whose complaints fail to state a claim "are entitled to amend their complaint unless doing so would be inequitable or futile." *Rhett v. Disman*, 228 F. App'x 225, 227 (3d Cir. 2007) (internal quotation marks omitted). The district court's discretion to deny leave to amend is further restrained by its "obligation to liberally construe a *pro se* litigant's pleadings." *Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011); *see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("If a claim is vulnerable to

5

dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted.").

Consistent with its obligation to liberally construe the pleadings of *pro se* litigants, the Court is also required to consider whether a request for leave to amend is implicit in certain *pro se* filings, like the one presented here. *See Rhett v. Disman*, 228 F. App'x 225, 227 (3d Cir. 2007). The Court finds such a request implicit in Plaintiff's Amended Complaint, and in its discretion elects to grant Plaintiff's request. Accordingly, the Court accepts Plaintiff's Amended Complaint as the operative pleading and finds that it supersedes Plaintiff's initial Complaint.[3] KM's Motion (ECF No. 22) is therefore denied insofar as it seeks to strike the Amended Complaint. Further, because KM and Chevron have since responded to the Amended Complaint with separately filed Motions, their First Motions to Dismiss the initial Complaint (ECF Nos. 6, 17) are denied as moot.

A. **Defendants' Motions to Dismiss the Amended Complaint**

Having identified Plaintiff's Amended Complaint as the operative pleading, the Court next turns to the Motions of KM, Chevron, and Texaco to Dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6) (ECF Nos. 22, 30).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed

---

[3] In opposing KM's Motion to Strike, Plaintiff submitted a letter to the Court charging that he never received a copy of KM's First Motion to Dismiss the initial Complaint and, therefore, he was permitted to file his Amended Complaint as a matter of course (ECF No. 25). Plaintiff and KM continued to address this challenge in subsequent letters to the Court (ECF Nos. 26, 27). The Court declines to address the merits of Plaintiff's charge having found that his Amended Complaint is the operative pleading.


factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557). While *pro se* pleadings are to be liberally construed in conducting such an analysis, *pro se* litigants must still "allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

       i.    *Plaintiff's Claims on Behalf of the Decedent's Estate*

At first blush, it appears that Plaintiff's Amended Complaint asserts claims both on behalf of himself in his individual capacity and on behalf of the Decedent's estate. However, a more thorough inspection of the Amended Complaint reveals that Plaintiff only asserts claims in his individual capacity—not on behalf of the Decedent's estate.

Plaintiff asserts that he has developed major depressive disorder and post-traumatic stress disorder during the time that he was a thirty-day caregiver to the Decedent (ECF No. 19 at 6). Plaintiff also details at great length the financial inconvenience and loss that he suffered by

abandoning his job in the entertainment industry, as well as having to forego "lucrative projects" to care for his brother (*Id.* at 6–12). For example, Plaintiff claims that, but for becoming the Decedent's caretaker, he would have completed the "Black Caesar Movie," and that this film would have surpassed $300 million in gross revenue based on the gross revenue of a similar production featuring Denzel Washington (*Id.* at 6). Plaintiff further claims that, because of the Defendants' alleged wrongdoings, he was also forced to cancel his role as "Bumpy Johnson" in a successful mob film (*Id.*). Therefore, Plaintiff seeks $60 million, "the average of 10 million [dollars] for each defendant," as compensation for his expenses associated with the care of the Decedent, which was necessitated by the Defendants' alleged wrongdoing for causing the Decedent's illness and death (*Id.* at 7). As a result, Plaintiff asserts claims of negligent and intentional infliction of emotional distress, and seeks injunctive relief.

Although Plaintiff purports to assert claims on behalf of the Decedent's estate, this Court simply cannot discern any cause of action brought on behalf of the Decedent's estate. Though the Court is required to liberally construe the pleadings of a *pro se* litigant, Plaintiff is not "absolved from complying with *Twombly* and the federal pleading requirements merely because [he] proceeds *pro se*." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted). Thus, because Plaintiff has not alleged "sufficient facts in [his] complaint[] to support a claim," any purported claim on behalf of the Decedent's estate fails. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (internal citation omitted); *see also Pliler v. Ford*, 542 U.S. 225, 226 (2004) ("Requiring district courts to advise a *pro se* litigant . . . would undermine district judges' role as impartial decisionmakers.").

Moreover, even assuming that Plaintiff is attempting to assert claims on behalf of the Decedent's estate, such a claim fails for two paramount reasons. First, and most glaringly, a *pro*

*se* litigant who is not an attorney may not represent another in federal court, including decedents' estates. *See Osei–Afriyie v. Med. Coll. of Penn.*, 937 F.2d 876, 882 (3d Cir. 1991); *see also Murray on behalf of Purnell v. City of Philadelphia*, 901 F.3d 169, 171 (3d Cir. 2018) (holding that a non-attorney, non-beneficiary administrator may not represent a decedent's estate in federal court). Second, because the Amended Complaint does not even suggest that Plaintiff is the executor or administrator of the Decedent's estate, he lacks standing to bring any claims on behalf of the estate. *See Endl v. New Jersey*, 5 F. Supp. 3d 689, 696 (D.N.J. 2014) (quoting N.J.S.A. 2A:15–3) (noting that it is well settled under New Jersey law that only "an executor or administrator may pursue an action based on the wrongful act, neglect, or default of another, where death resulted from injuries for which the deceased would have had a cause of action if he lived").

Consequently, the Court reads Plaintiff's Amended Complaint to only assert claims on his own behalf, rather than on behalf of the Decedent's estate. To this end, any purported claims on behalf of the Decedent's estate fail.

### ii. *Plaintiff's Claim for Negligent Infliction of Emotional Distress*

Plaintiff's claim for negligent infliction of emotional distress ("NIED"), for having allegedly developed major depressive disorder and post-traumatic stress disorder as a result of witnessing the illness and eventual death of his brother, fails to satisfy the essential elements of the cause of action.

To state an NIED claim under New Jersey law, a plaintiff must demonstrate "(1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate, familial relationship between the plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting severe emotional distress." *Est. of Rosario v. Paterson Police Dep't*, No. CV 14-5167, 2016 WL 6540447, at *2 (D.N.J. Nov. 3, 2016) (quoting

*Portee v. Jafee*, 642 A.2d 372, 417 (N.J. 1980)). To succeed, a plaintiff must "observe the kind of result that is associated with the aftermath of an accident, such as bleeding, traumatic injury, and cries of pain . . . when the injury is inflicted or immediately thereafter." *Hurst v. L.N.K. Int'l, Inc.*, No. 20-1242, 2020 WL 3287147, at *2 (D.N.J. June 18, 2020) (internal quotation marks omitted). New Jersey courts have thus declined to extend NIED claims to include the decline and death of a loved one where the negligent act is not contemporaneously witnessed with the physical injury. *See, e.g.*, *Lindenmuth v. Alperin*, 484 A.2d 1316, 1317 (N.J. Super. Ct. 1984) (affirming dismissal of NIED claim of parents whose child died three days after birth as a result of negligent failure to diagnose bowel obstruction); *see also Frame v. Kothari*, 560 A.2d 675, 679 (N.J. 1989) ("Grief over the gradual deterioration of a loved one, as profound as that grief may be, often does not arise from a sudden injury. The observer has time to make an emotional adjustment.").

Here, because Plaintiff ties his emotional distress to the gradual deterioration and ultimate death of his brother, his NIED claim cannot go forward. Though the Court does not minimize the effects of the Decedent's death upon Plaintiff, New Jersey law simply does not recognize such an NIED claim based on the facts alleged. *See id.* As such, the Court grants the Motions to Dismiss of KM, Chevron, and Texaco (ECF Nos. 22, 30) and dismisses Plaintiff's NIED claim with prejudice.

### iii. *Intentional Infliction of Emotional Distress*

Though not expressly pleaded, a claim for intentional infliction of emotional distress ("IIED") can ostensibly be gleaned from the Amended Complaint. IIED denotes "extreme and outrageous conduct [which] intentionally or recklessly causes severe emotional distress to another." *Lingar v. Live-In Companions, Inc.*, 692 A.2d 61, 67 (N.J. Super. Ct. 1997) (quoting *Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857 (N.J. 1988) (internal quotation marks omitted).

Moreover, to state a claim for IIED, a plaintiff must allege (1) conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community, (2) a deliberate act, committed with the intent to cause emotional distress or with deliberate disregard of a high probability that emotional distress would occur, (3) proximately causing emotional distress that is so severe that no reasonable man could be expected to endure it." *See Ramirez v. U.S.*, 998 F. Supp. 425, 434 (D.N.J. 1998) (citing *Buckley*, 544 A.2d at 863).

To the extent that Plaintiff's asserted claim for IIED stems from the care he provided to his brother and his observation of his brother's health failure, this claim also fails because Plaintiff cannot plausibly allege that the Defendants committed a deliberate act with the intent to cause him severe emotional distress. Moreover, there is no suggestion that the Defendants directed any behavior, illicit or otherwise, toward the Plaintiff. Indeed, Plaintiff does not allege any direct affiliation or relationship with the Defendants, but rather only claims that his brother maintained an employer-employee relationship with the Defendants. Simply stated, these facts do not denote the type of extreme and outrageous conduct that is required to support a claim for IIED.

### iv.     *Plaintiff's Demand for Injunctive Relief*

It appears that Plaintiff seeks injunctive relief in the form of construction of a medical facility in his brother's name. Injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002) (internal citation and quotation marks omitted). A plaintiff seeking a preliminary injunction must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary

relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

However, Plaintiff's demand for injunctive relief is fatally flawed because in order to obtain injunctive relief, Plaintiff "must allege a real and immediate threat of future injury." *Doe v. Div. of Youth & Fam. Servs.*, 148 F. Supp. 2d 462, 478 (D.N.J. 2001). In short, Plaintiff can point to no conduct to be restrained or compelled. Arguably, Plaintiff's demand for injunctive relief reflects more of a reparative remedy and does not satisfy the criteria necessary to warrant injunctive relief. Consequently, the Court grants the Motions to Dismiss of KM, Chevron, and Texaco (ECF Nos. 22, 30) and dismisses Plaintiff's claim for injunctive relief with prejudice.

### B. **Plaintiff's Motion for Leave to File Second Amended Complaint**

Lastly, the Court turns to Plaintiff's Motion for Leave to File a SAC (ECF No. 29). Fed. R. Civ. P. 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." However, a motion to amend a complaint may be denied where there is undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Futility "means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). When considering denial of an amendment on the grounds of futility, the facts alleged in the proposed amended complaint, and all reasonable factual inferences drawn from those facts, are construed in the moving party's favor. *See id.* However, if a claim is vulnerable to dismissal under Rule 12(b)(6), a court is not required to grant leave to amend if doing so would not cure the deficiencies of the pleading. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

In addressing the moving Defendants' Motions to Dismiss the Amended Complaint (ECF Nos. 22, 30), the Court has construed Plaintiff's Amended Complaint liberally; has accepted all of his factual allegations as being true; has construed Plaintiff's claims in the light most favorable to him; and has thoroughly considered whether Plaintiff may be entitled to relief in federal court under any reasonable reading of the claims alleged in the Amended Complaint. The Court has also considered Plaintiff's Motion seeking leave to file a Second Amended Complaint (ECF No. 29), as well as his other filings in which he addresses the pending Motions and articulates the bases for which he seeks leave to amend (ECF Nos. 25, 27, 32, 36). The Court finds any attempt by Plaintiff to replead would be futile in that the proposed amendments sought in the present Motion do not raise any new facts, issues, or claims. Indeed, Plaintiff only seeks to rename KM as "Kinder Morgan, Inc."; "Energy Transfer Partners" as "Energy Transfer Partners, GP, L.P."; and to completely remove Coastal Corporation as a named defendant. Thus, because the proposed SAC merely reasserts the claims for NIED, IIED, and injunctive relief, without any modification of the facts supporting the same, amendment would be futile, and the Court is convinced that Plaintiff cannot cure any of the legal deficiencies inherent in his claims. Plaintiff's Motion for Leave to Amend (ECF No. 29) is denied, and his Amended Complaint is dismissed with prejudice.[4]

---

[4] The Court is mindful that Plaintiff's Amended Complaint also asserts the same claims against Coastal Corporation, Sunoco Inc. ("Sunoco"), and Energy Transfer Partners ("ETP"). In his Motion for Leave to Amend, Plaintiff informs the Court that Coastal Corporation "is no longer an existing Defendant" and that it "must be removed from the [Amended] [C]omplaint." (ECF No. 29 at 4). Thus, the Court's dismissal of Plaintiff's Amended Complaint will also extend to Coastal Corporation. As for ETP, Plaintiff also seeks to rename "Energy Transfer Partners" to "Energy Transfer Partners GP, L.P." (*Id.*). However, because the claims against ETP and Sunoco are premised upon the same factual allegations as those against the moving defendants, Plaintiff's claims against ETP and Sunoco are likewise dismissed with prejudice. *See Coulter v. Unknown Prob. Officer*, 562 Fed. App'x. 87, 89 (3d Cir. 2014) (affirming district court's *sua sponte* dismissal of non-moving defendant where the grounds raised by the moving defendants were common to all defendants and the plaintiff had an opportunity to respond to the moving defendants' arguments); *see also Thomas v. Warren*, 2016 WL 7217207, at *6 n.2 (D.N.J. Dec. 12, 2016) (dismissing identical claims against unserved defendants "because the [c]ourt has dismissed all federal claims against the [m]oving [d]efendants based on Plaintiff's failure to state a claim upon which relief may be granted").

## IV. CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. KM's Motion to Strike or, in the alternative, to Dismiss Plaintiff's Amended Complaint (ECF No. 22) is **DENIED IN PART** and **GRANTED IN PART**:

    a) KM's Motion is **DENIED** insofar as it seeks to Strike the Amended Complaint,

    b) KM's Motion is **GRANTED** to the extent it seeks dismissal of Plaintiff's Amended Complaint under Fed. R. Civ. P. 12(b)(6);

2. Chevron and Texaco's Joint Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 30) is **GRANTED**;

3. The Motions of KM and Chevron to Dismiss Plaintiff's Complaint (ECF Nos. 6, 17) are **DENIED AS MOOT**;

Finally, the Court finds that, given the factual underpinnings of Plaintiff's claims, further amendment would not cure any of the legal deficiencies inherent in Plaintiff's Amended Complaint. Therefore, Plaintiff's Motion for Leave to File a Second Amended Complaint (ECF No. 29) is **DENIED**, and his Amended Complaint (ECF No. 19) is **DISMISSED WITH PREJUDICE** in its entirety.

Dated: September 30, 2022

*/s/ Karen M. Williams*
KAREN M. WILLIAMS
United States District Judge